J-A11045-16

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| UNCOMMON INDIVIDUAL FOUNDATION AND RICHARD CARUSO | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellants | |
| v. | |
| BRENDA-JAYNE WILTSHIRE | No. 1331 EDA 2015 |

Appeal from the Order Entered April 21, 2015
in the Court of Common Pleas of Delaware County Civil Division
at No(s): 2015-000404

BEFORE: SHOGAN, MUNDY, and FITZGERALD,[*] JJ.

MEMORANDUM BY FITZGERALD, J.:                    **FILED JULY 08, 2016**

Appellants, Uncommon Individual Foundation ("UIF") and Richard Caruso ("Caruso"), appeal from the order of the Delaware County Court of Common Pleas denying their petition to strike, set aside, or modify an arbitration award in favor of Appellee, Brenda-Jayne Wiltshire.[1] Appellants claim the arbitration panel (1) entered an award on matters outside the scope of the arbitration agreement, specifically, ownership of intellectual property related to "happinessPilot" ("'happinessPilot'-IP") (2) denied

---

[*] Former Justice specially assigned to the Superior Court.

[1] Appellants also requested that the arbitration record be opened for legal insufficiency. Moreover, in a footnote in their petition, they requested modification of the award to reflect that Caruso was not individually liable. The trial court did not grant that request and we retain the plural form of Appellants for the purposes of this memorandum. We also note that the trial court separately granted Appellee's cross-petition to confirm the arbitration award, enter judgment, and award attorney fees.

Appellants discovery and a full and fair hearing on the merits, (3) ignored uncontested testimony and controlling law regarding ownership of the "happinessPilot"-IP, (4) ignored evidence and controlling law regarding Appellee's failure to mitigate damages, and (5) entered an award that was based on contradictory findings and too vague to be enforceable. We affirm.

The factual background to this appeal is as follows. Caruso is the founder, chairman, and president of UIF, a non-profit corporation organized with a "focus on people helping people, to create mentoring projects, and to help people live in a positive way." Final Award in Arbitration ("Award"), 12/18/14, at 5 n.3. Additionally, Caruso was the president of The Provco Group, an organization that was not a party in the underlying arbitration proceeding, but which maintained a condominium at 210 Rittenhouse Square, where Appellee resided. Caruso and Appellee met in the 1990's, and, in 1996, Caruso assisted Appellee in maintaining her residence at the condominium. In 1999, Appellee began updating UIF's website. In 2002 or 2003, UIF began paying Appellee a salary. Appellee and UIF entered into an employment agreement effective January 1, 2007, designating Appellee as a director of development.

In June 2010, Appellee took a leave of absence from UIF, although UIF continued to pay her salary and provide benefits. In mid- to late-2010, while on leave, Appellee began the "happinessPilot" project, which was described as "a web-based delivery of digital and non-digital material

designed to allow a user to navigate a 'flight plan' to personal happiness."

*Id.* at 2. In February 2011, Appellee contacted Rosica Daskalova to assist in the project. In May 2011, Appellee informed Caruso of the project and thereafter reported periodically to him. In June 2011, UIF reimbursed Daskalova for her previous work on the project and began paying her a stipend. In August 2011, UIF assigned a full-time code writer, Scott Bradley, to the "happinessPilot" project.

Appellee and UIF entered into employment agreement effective January 1, 2012 ("2012 employment agreement"). Appellee was designated the Chief Happiness Pilot Development and Marketing Officer, and was responsible for:

> a) Immediately transferring all the Happiness Pilot URL's to the Employer GoDaddy URL account and agreeing that the Employer is the exclusive owner of all such URL's; [and]
>
> b) Development of the Employer's Happiness Pilot Website[.]

2012 Employment Agreement, 1/1/12, at ¶ 2. Under the agreement, Appellee was to serve "in the capacity of Founder, Chairman and CEO of such Happiness Pilot project and its related activities." *Id.*

The 2012 Employment Agreement contained the following arbitration provision:

> Except for injunctive relief as provided in paragraph 7 above, any disputes which may arise regarding the interpretation, application or enforcement of this Agreement (including any questions whether a dispute is arbitrable) shall be settled by final and binding arbitration.

> The arbitration shall be carried out by an arbitration panel of three members of the American Arbitration Association located in Western New York all of whom shall be independent and impartial and none of whom shall be appointed by either party, and shall be conducted in accordance with the commercial rules of that Association.

*Id.* at ¶ 9.

Relations between Appellee and UIF broke down in 2014. UIF stopped paying her salary, terminated her benefits, and declared her in breach of the 2012 employment agreement. Appellee could no longer access "happinessPilot."

On March 19, 2014, Appellee filed a demand for arbitration in the American Arbitration Association.[2] Appellee asserted, in relevant part: (1) she was the exclusive owner of "happinessPilot"; (2) UIF misappropriated "happinessPilot"; (3) UIF breached the 2012 employment agreement; and (4) she was entitled to $1.4 million in damages for unpaid salary, benefits, loss of opportunity, and continued development costs for the balance of the

---

[2] Appellee, when demanding arbitration, requested the panel be located in Philadelphia. She acknowledged that paragraph 9 of the 2012 employment agreement referred to venue in "Western New York." Appellee's Statement of Claim, 3/19/14, at 2. However, she asserted that description was ambiguous because no American Arbitration Association office existed in the area specified in the agreement and that Philadelphia was convenient for the parties. *Id.* The venue of the arbitration was not specified in the record. We again note that Appellants filed their petition to strike, set aside, or modify the award in Delaware County. *See* 42 Pa.C.S. §§ 7319(1), 7342(a).

agreement's term.[3]  **See** Award at 2; Appellee's Statement of Claim, 3/19/14 at 7.  Appellants answered Appellee's statement of claims and requested that "this matter be decided in [their] favor . . . , all property rights to the work on HappinessPilot be awarded to UIF, [and] that [Appellee] be declared in material breach of her agreement."  Appellants' Answer to Appellee's Statement of Claims, 4/8/14, at 18.  Appellant also asserted counterclaims seeking (1) $250,000 in breach of contract damages and (2) an injunction preventing Appellee from disclosing or using any confidential and proprietary information regarding "happinessPilot."  Award at 3; Appellants' Counterstatement of Claim, 6/2/14, at 3-4.

The arbitrators conducted several hearings, but did not record the proceedings for transcription.  Award at 4 n.2.  On December 18, 2014, the arbitration panel entered an award in Appellee's favor. Regarding "happinessPilot," the arbitrators ordered:

> As between [Appellee] and UIF, [Appellee] is the owner of the intellectual property of happinessPilot that was created between June 26, 2010 and August 31, 2011.
>
> UIF owns all the intellectual property that was created in happinessPilot from September 1, 2011, to February 10, 2014.

Award at 41.

---

[3] Appellee also requested a determination that she was entitled to remain in the Rittenhouse condominium.

As to the damages from Appellants' breach of the 2012 employment agreement, the arbitrators ordered:

> Within thirty days after the date of this Award UIF will pay [Appellee] any unpaid salary due under the 2012 Employment Agreement from February 10, 2014 through December 31, 2014, subject to required withholdings.
>
> UIF will fund an account or purchase an annuity sufficient to pay a yearly $80,000 salary to [Appellee] on a monthly basis, beginning January 1, 2015 and ending December 31, 2019.

*Id.*

On January 16, 2015, Appellants filed the petition to strike, set aside, or modify the arbitration award that gives rise to this appeal. Appellee filed a response with new matter and a cross-petition to confirm the award, enter final judgment, and award attorney fees. Appellants filed a response to the cross-petition.

The trial court heard arguments on Appellants' petition and Appellee's cross-petition on April 20, 2015. The following day, the court entered its orders denying Appellants' petition to strike, set aside, or modify the arbitration award and granting Appellee's petition to confirm the arbitration award, enter final judgment, and award attorney fees.[4] On April 29, 2015, a final judgment was entered on the *praecipe* filed by Appellee.

---

[4] As noted by Appellee, Appellants do not challenge the orders granting her cross-petition to confirm the arbitration award or the order granting attorney

- 6 -

Appellants, on May 4, 2015, filed a timely notice of appeal. The trial court did not order a Pa.R.A.P. 1925(b) statement.

Appellants present five questions for review.

> Whether the trial court erred as a matter of law when it denied Appellants['] petition to vacate, set aside or modify the arbitration award when the arbitration panel addressed an issue and entered an award outside the scope of the agreement?
>
> Whether the trial court erred as a matter of law when it denied Appellants['] petition to vacate, set aside or modify the arbitration award where the arbitration panel denied Appellant's a full and fair hearing by denying discovery necessary to defend the claim during the arbitration process?
>
> Whether the trial court erred as a matter of law when it denied Appellants['] petition to vacate, set aside or modify the arbitration award when the arbitration panel ignored uncontested testimony and failed to apply the controlling case law in determining ownership of happinessPilot?
>
> Whether the trial court erred as a matter of law when it denied Appellants['] petition to vacate, set aside or modify the arbitration award when the arbitration panel ignored evidence and failed to apply controlling case law regarding mitigation of damages?
>
> Whether the trial court erred as a matter of law when it denied Appellants['] petition to vacate, set aside or modify the arbitration award when the arbitration panel entered an award that was contradictory, unenforceable and contrary to law?

Appellants' Brief at 4-5.

---

fees. Therefore, we confine our discussion to Appellants' arguments regarding the denial of the their petition to strike, set aside, or modify.

Appellee, in her responsive brief, suggests Appellants' brief is defective and their arguments are frivolous. Appellee's Brief at 13-15. Appellee seeks attorney fees and delay damages under Pa.R.A.P. 2744. *Id.* at 16-18.

"[W]hen reviewing a trial court's ruling on a petition to vacate or modify an arbitration award, this Court will only reverse for an abuse of discretion or error of law." *MGA Ins. Co. v. Bakos*, 699 A.2d 751 (Pa. Super. 1997) (citation omitted). The principles governing judicial review of a common law arbitration award are codified in Section 7341 of the Judicial Code.

> The award of an arbitrator in a nonjudicial arbitration which is not subject to [42 Pa.C.S. §§ 7301-7320] (relating to statutory arbitration) or a similar statute regulating nonjudicial arbitration proceedings is binding and may not be vacated or modified unless it is clearly shown that a party was denied a hearing or that fraud, misconduct, corruption or other irregularity caused the rendition of an unjust, inequitable or unconscionable award.

42 Pa.C.S. § 7341. "[A]n appellant bears the burden to establish both the underlying irregularity and the resulting inequity by clear, precise and indubitable evidence." *F.J. Busse Co.. v. Sheila Zipporah, L.P.*, 879 A.2d 809, 811 (Pa. Super. 2005) (citations and quotation marks omitted).

First, Appellants assert that the issue of ownership exceeded the scope of the agreement to arbitrate in the 2012 employment agreement. Appellants emphasize that the arbitrators "acknowledged that 'nothing in the 2012 [a]greement declares who owns the intellectual property that makes

up ['happinessPilot']." Appellant's Brief at 15. According to Appellants, "by addressing the issue of ownership of ['happinessPilot'], the panel was delving into matters beyond the scope of the parties' [e]mployment [a]greement . . . ." *Id.* No relief is due.

"Our decisional law has made clear that the issue of whether a party agreed to arbitrate a dispute is a threshold, jurisdictional question that must be decided by the court." *Pisano v. Extendicare Homes, Inc.*, 77 A.3d 651, 654 (Pa. Super. 2013) (citation omitted). Generally, "[w]hether a claim is within the scope of an arbitration provision is a matter of contract . . . ." *Elwyn v. DeLuca*, 48 A.3d 457, 461 (Pa. Super. 2012) (citation omitted). "[P]arties to a contract cannot be compelled to arbitrate a given issue absent an agreement between them to arbitrate that issue." *Id.* (citation omitted).

Assuming *arguendo* that the 2012 employment agreement's silence on the ownership of the "happinessPilot"-IP evinces the absence of an agreement that such a dispute was arbitrable, a review of record confirms Appellants nonetheless assented to the arbitrators' jurisdiction. Appellants did not contest the jurisdiction of the arbitrators to decide ownership of the "happinessPilot"-IP. *See* Appellants' Answer to Appellee's Statement of Claims at 2. Similarly, Appellants did not seek to stay arbitration on the ownership issue in the court of common pleas. *See id.* at 18; *see generally* 42 Pa.C.S. §§ 7304, 7342.

Moreover, Appellants not only failed to object to the jurisdictional issue, but also submitted the determination of ownership of the "happinessPilot"-IP to the arbitrators. *See* Appellants' Answer to Appellee's Statement of Claims at 2. Appellants specifically sought a determination that UIF owned the "happinessPilot"-IP. *See id.* At arbitration, Appellants were prepared to assert that Appellee was an employee while on leave and that they owned all of the "happinessPilot"-IP. *See* Award at 20 (noting the parties "vehemently disagree" on whether Appellee had any ownership interest prior to January 1, 2012). Because Appellants assented to have the issue of ownership placed before the arbitrators, they cannot now complain that the adverse outcome was not subject to arbitration. Accordingly, we cannot conclude that Appellants were compelled to arbitrate an issue beyond the scope of their agreement. *See DeLuca*, 48 A.3d at 461. Thus, the trial court did not err in declining to strike, set aside, or modify the arbitrators' award based on this claim.

Second, Appellants contend arbitrators deprived them of a full and fair opportunity regarding ownership of the intellectual property related to "happinessPilot." They claim that in discovery, they were denied their requests for (1) Appellee to provide "access to computer backup disks that contained the only evidence of work performed by Appellee prior to May or June of 2011" and (2)an extension of time for discovery. Appellants' Brief at 18. Appellants conclude, "[T]he Arbitration Panel issued a ruling on

- 10 -

ownership of ["happinessPilot"] prior to May or June 2011 despite never reviewing any evidence that there was any work performed on [it] prior to this time. This resulted in a denial of Appellants' right to a full and fair hearing . . . ." *Id.* at 18-19. In support, Appellants rely on ***Smaligo v. Fireman's Funds Ins. Co.***, 247 A.2d 577 (Pa. 1968), for the proposition that the denial of a full and fair hearing is a basis to set aside an arbitration award. Appellants' Brief at 16-17. Our review reveals that Appellants failed to establish an adequate irregularity in the arbitration proceeding based on the alleged limitation on their ability to conduct discovery.

This Court has observed:

> "Arbitration, while not surrounded by the technical procedural safeguards incident to litigation, is not a wholly informal process and requires for its validity the observance of certain minimum standards indispensable to the securing of a fair and impartial disposition of the merits of a controversy." These minimum standards require that both parties are provided with notice, all the arbitrators must sit at the hearing, each side is entitled to be heard and to be present when the other party's evidence is being given and, unless the submission allows a decision by a majority of the arbitrators, all must join in the award.

***Andrew v. CUNA Brokerage Servs., Inc.***, 976 A.2d 496, 501 (Pa. Super. 2009) (citations omitted).

"The right to discovery is one of these devices which is not obligatory as an essential of due process to a valid arbitration proceeding." ***Harleysville Mutual Casualty Co. v. Adair***, 218 A.2d 791, 794 (Pa. 1966). Questions regarding discovery are generally matters within the exclusive

jurisdiction of the arbitrators. *See Savage v. Commercial Union Ins. Co.*, 473 A.2d 1052, 1059 (Pa. Super. 1984).

Instantly, the record reveals the following procedural history of this claim. In the trial court, Appellee, as a response to Appellants, asserted that the arbitration panel, "specifically permitted discovery concerning the creation of happinessPilot and only limited discovery of documents relating to future development of happinessPilot . . . ." Appellee's Resp. to Appellants' Pet. to Vacate, Set-Aside or Modify Arbitrators' Award and Open Record, 2/4/15, at 11-12. In support, Appellee attached to her response the arbitrators' June 25, 2014 discovery order indicating that Appellee was to produce documents in her "possession or control relating to the creation of the happinessPilot.org." *Id.* at Ex. E. Appellee thus requested that the court strike Appellants' petition for relief.

In response to Appellee's motion to strike, Appellants denied Appellee's averment that the arbitration panel permitted discovery regarding the creation of "happinessPilot." Appellants' Resp. in Opp'n to Appellee's Mot. to Strike the Pet. to Vacate, Set-Aside or Modify the Arbitrators' Award, 4/22/15, at 4. However, they restated their general claim that they were denied a full and fair hearing and that the arbitrators' award lacked a proper evidentiary basis. *Id.*

Appellants, for the first time on appeal, state they were denied access to backup computer disks containing evidence of work performed by

Appellee during May or June 2011. *See* Appellants' Brief at 18. Subsequently, in a supplemental reproduced record appended to their reply brief, Appellant attached Appellee's answers to Appellants' interrogatory. That document, however, was not contained in the original record and thus cannot be presumed to have been presented to the trial court. In any event, the contents of that document do not substantiate the claim that Appellants requested, but were denied, access to information on the backup computer disks.

In light of the foregoing, we conclude that Appellants' argument that it was denied certain computer disks is waived for appellate review. *See* Pa.R.A.P. 302(a) ("Issues not raised in the lower court are waived and cannot be raised for the first time on appeal"); *see generally Ruspi v. Glatz*, 69 A.3d 680, 690-91 (Pa. Super. 2013) ("[F]or purposes of appellate review, what is not in the certified record does not exist."). Further, it is apparent that Appellants' general claims of inadequate discovery in the trial court did not meet their burden of establishing, "by clear, precise and indubitable evidence," that the discovery ruling amounted to an "irregularity" for the purposes of upsetting the arbitrators' award. *See F.J. Busse Co.*, 879 A.2d at 811. Therefore, our review compels us to conclude that the trial court did not err in denying relief on this claim.

Appellants, in their third and fourth claims on appeal, assert manifest injustice in the arbitration. Appellant's Brief at 20, 23. We address these assertions jointly and find no relief is due.

Appellants, in their third claim, focus on the arbitrators' determination that Appellee was not an employee during her leave from UIF beginning in June 2010, when she began work on "happinessPilot." According to Appellants, the arbitrators, when rejecting their claim that "happinessPilot" was work-for-hire from its inception, improperly determined Appellee's employment status during her 2010-2011 leave. *Id.* at 19 (citing "work-for-hire" doctrine codified in 17 U.S.C. § 201). They assert that the arbitrators "completely disregarded the facts and the law, resulting in manifest injustice, sufficient pursuant to the statute and case law to vacate the Arbitration Award." *Id.* at 20.

In their fourth claim, Appellants assert the arbitrators "completely ignored what was required of them pursuant to law, and no judge or group of judges would have disregarded the Appellee's failure to mitigate her damages as consideration of same is required by law." *Id.* at 21-22. Appellants note "Appellee was requested to continue working for UIF while they worked out a resolution to the ownership dispute[, but] Appellee refused to return to the office or return to her employment at UIF." *Id.* at 23. They also observe that Appellee never made an attempt to obtain other employment. *Id.* Appellants conclude that (1) the "award in excess of

$400,000," apparently referring to the award of unpaid salary from February 10, 2014 through December 31, 2014, "is a manifest injustice that must be corrected" and (2) the arbitrators engaged in a "manifest disregard for established law" by allowing "Appellee to continue to collect a salary from UIF for the next four years while making absolutely no effort to seek alternative employment" to mitigate her damages. *Id.* at 23-24.

Preliminarily, we note that Appellants' references to "manifest injustice" conflate the standards governing challenges to statutory and common law arbitration. *See* Appellant's Brief at 19, 21. Because the 2012 employment agreement did not expressly refer to the Pennsylvania Uniform Arbitration Act, 42 Pa.C.S. §§ 7301-7320, or a similar statute, the standards governing common law arbitration apply. *See* 42 Pa.C.S. §§ 7302(a), 7341; *Lowther v. Roxborough Mem. Hosp.*, 738 A.2d 480, 483-85 (Pa. Super. 1999).

A review of common law arbitration is governed by the precept that "[t]he arbitrators are the final judges of both law and fact, and an arbitration award is not subject to reversal for a mistake of either." *Toll Naval Assoc. v. Hsu*, 85 A.3d 521, 525 (Pa. Super. 2014) (citations omitted). As this Court has noted:

> [t]he language of [42 Pa.C.S.] § 7341 and decided cases make it evident that only claims which assert some impropriety in the arbitration process may be the subject to an appeal—to the exclusion of appeals which seek review of the merits. Accordingly, it may be concluded that while the appeal court will entertain a claim that there

has been a systemic defect in the proceedings, attempts to add to, or reopen, litigated issues or to rekindle the consideration of the merits are not subject to appeal.

*Snyder v. Cress*, 791 A.2d 1198, 1201 (Pa. Super. 2002) (citations omitted). Because the focus is on "fraud, misconduct, corruption or other irregularity" in the underlying process, judicial review of common law arbitration is more limited than a review of statutory arbitration. *See F.J. Busse Co.*, 879 A.2d at 811 (reiterating that "it is always open to contracting parties to provide for statutory . . . arbitration where the grounds for review are much broader than" for common law arbitration); *Duquesne Light Co. v. New Warwick Min. Co.*, 660 A.2d 1341, 1344, 1346 (Pa. Super. 1995) (discussing and comparing judicial review under manifest injustice standard and Pennsylvania law regarding common law arbitration).

As Appellants rely on an incorrect standard, they have not established a right to appellate relief. Moreover, our review compels the conclusion that Appellants' third and fourth claims go to irregularities in the result,[5] not an

---

[5] On the issue of Appellants' mitigation of damages claim, we note:

> In an employment case, the measure of damages is the wages which were to be paid less any amount actually earned or which might have been earned through the exercise of reasonable diligence in seeking other similar employment. **The burden is on the breaching party to show that the losses could have been avoided**. This burden can be established "by proving that other substantially equivalent positions were available to [the

- 16 -

irregularities in the procedures. **See Snyder**, 791 A.2d at 1201; **Duquesne Light Co.**, 660 A.2d at 1344, 1346. Therefore, applying the proper standards, we find no relief is due on Appellants' third and fourth claims.

Appellants, in their fifth claim, argue that the arbitrators' findings and conclusions of law were "contradictory" and "[t]he vagueness of the Panel's award renders the enforcement of this award impossible." Appellants' Brief at 24-25. Appellants' arguments that the findings and conclusions of law were contradictory incorporate their previous contentions, **see id.** at 24-25, and we need not reiterate our disposition of those matters.

However, Appellants' argument that the award is too vague to be enforceable warrants further discussion. Appellants contend that the award of ownership of intellectual property related to "happinessPilot" until August 2011 renders enforcement "impossible." **Id.** at 25. Appellants observe "Appellee believes that the idea of ["happinessPilot's"] conceptualization gives her complete ownership of the IP." **Id.** at 25. They contend that

---

employee] and that [she] failed to use reasonable diligence in attempting to secure those positions."

**Delliponte v. DeAngelis**, 681 A.2d 1261, 1265 (Pa. 1996) (citation omitted and emphasis added). Aside from the assertion that Appellee did not look for alternative employment, Appellants provide no further suggestion that they carried their burden at the arbitration hearing.

"there is no way to ascertain what, if anything, was developed before September 2011 and what was developed after." *Id.*

We agree that the arbitrators' award did not resolve all issues regarding "happinessPilot." The arbitrators acknowledged their award was limited to the arguments and evidence. The arbitrators, for example, declined to address Appellants' claim that "happinessPilot" was derived from or based on UIF's existing "Discovery" project. *See* Award at 7 n.6. Moreover, the arbitrators did not address whether third-parties "might have intellectual property interests in happinessPilot." *Id.* at 26 n.30. That the award regarding ownership did not resolve all disputes, however, does not render the award "unenforceable." While Appellants detail the difficulties of implementing the decision based primarily on the work-for-hire theories presented by the parties, they provide no additional support for their claim that the award regarding ownership is unenforceable. Thus, we find no basis to disturb the trial court's decision to deny Appellants' petition on this basis.

Lastly, Appellants argue that the award directing them to "fund an account or purchase an annuity sufficient to pay" Appellee's expectation damages for the breach of the 2012 employment agreement was too vague to be enforced. They assert the arbitrators failed to consider the tax implications, allocations of administrative fees, or possible interest or investment income from the account or annuity would require the record to be reopened. Appellants' Brief at 25-26.

- 18 -

The award directing Appellants to continue to pay her annual salary of $80,000 for the balance of the term of the 2012 employment agreement is somewhat unusual. It appears neither party presented evidence as to the present value of the expectation damages associated with UIF's breach of the agreement. *See* Award at 36 (noting Appellants "did not provide evidence of the present value of [Appellee's] remaining pay, and [Appellee] is not entitled to a windfall"). Thus, the arbitrators issued an award under which Appellant would not immediately obtain the entire future value of her future salary, but would receive the value of the remainder of the 2012 employment agreement under the amounts and terms of the agreement. Although Appellants again point to difficulties with implementing the award, we cannot conclude that the award is too vague to enforce. Thus, we conclude Appellants have not established error in the trial court's decision to deny their petition to strike, set aside, or modify the award.

Lastly, as to Appellee's requests to strike the appeal based on a defective brief, our review reveals that the alleged deficiencies in Appellants' brief do not hamper meaningful appellate review. As to Appellee's request for counsel fees and delay damages, we conclude that Appellants presented at least some colorable issues for appeal. Although Appellants ultimately failed to convince this Court that the trial court erred, we cannot conclude the appeal was frivolous, the appeal was taken solely for delay, or that Appellants' conduct was dilatory, obdurate, or vexatious. *See* Pa.R.A.P.

2744.  Therefore, we reject Appellee's request that this Court to invoke Rule 2744.

Order affirmed.

Judgment Entered.

_____
Joseph D. Seletyn, Esq.
Prothonotary

Date: 7/8/2016